```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                        JACKSON DIVISION
```

**VICTORY LANE PRODUCTIONS, LLC,**
A MISSISSIPPI LIMITED LIABILITY COMPANY                        PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:04CV819-WHB-AGN

**PAUL, HASTINGS, JANOFSKY & WALKER, LLP,**
A CALIFORNIA LIMITED LIABILITY PARTNERSHIP,
AND CLAUDIA CALLAWAY, AN INDIVIDUAL                          DEFENDANTS


## OPINION AND ORDER

This cause is before the Court on Defendants' Motion for Summary Judgment. Having considered the Motion for Summary Judgment, the Response, the Rebuttal and all attachments to each, as well as supporting and opposing authority, the Court finds that the Motion is well taken in part and should be granted in part, and that it is not well taken in part and should be denied in part.

### I. Factual Background and Procedural History

This cause of action arises out of a legal representation gone awry. Before exploring the details of that representation, underlying facts must be set forth.

Plaintiff Victory Lane Products, LLC (hereinafter "Victory Lane") was formed for the purpose of "selling certain NASCAR collectibles, specifically, model bass trophy fish bearing the racecar number and colors of various NASCAR drivers." Complaint, p. 2, ¶ 4. The product was dubbed "Fast Bass." In Fall of 1999,

Victory Lane contracted with North Carolina based Morton Custom Plastics, Inc. (hereinafter "Morton") to produce the Fast Bass. At some time prior to January of 2001, Victory Lane believed that Morton was in breach of that contract, and began considering its legal options. The role of Defendants began at this point.

Defendant Paul, Hastings, Janofsky & Walker, LLP (hereinafter "Paul Hastings") is a law firm. Defendant Claudia Callaway is an attorney with Paul Hastings. In January of 2001, Victory Lane contracted with Paul Hastings to represent it in a breach of contract suit against Morton. Paul Hastings, on behalf of Victory Lane, filed suit against Morton on January 30, 2001, in the Circuit Court of Rankin County, Mississippi (hereinafter "underlying suit"), and it was later removed to this Court. Callaway took the lead role in prosecuting the underlying breach of contract suit. Attorney Erin Lane of Paul Hastings also played a significant role in the representation.

After the underlying suit was filed, Morton initiated a separate suit against Victory Lane in the Circuit Court of Cabarrus County, North Carolina (hereinafter "North Carolina suit"). Through that suit, Morton sought payment for services rendered to Victory Lane pertaining to production of the Fast Bass. Victory Lane fell into default in the North Carolina suit. However, after Paul Hastings was retained as counsel in the North Carolina Suit,

it was successful in having that suit stayed pending resolution of the underlying suit.

Litigation of the underlying suit appeared to proceeded along a normal course until September 11, 2002, at least from the perspective of Victory Lane. On that date, a mediation of the claims occurred. During the mediation, counsel for Morton alleged a conflict of interest on the part of Paul Hastings. The conflict of interest was based on the representation of GECC, Inc. (hereinafter "GECC") by Paul Hastings. GECC was a substantial creditor of Morton, and in fact, Paul Hastings represented GECC in structuring a credit agreement with Morton in March of 1999. In March of 2002, Paul Hastings again represented GECC in restructuring the 1999 credit agreement with Morton.

The representation of both Victory Lane and GECC on issues adverse to Morton forms the basis of the claims in the subject Complaint. Victory Lane alleges:

> Despite the conflict of interest between its clients, defendants PAUL HASTINGS and CALLAWAY failed to advise [VICTORY LANE] of the conflict, the circumstances involving their representation of the two clients with interests adverse to each other, and the irreconcilable position they were in. Instead, PAUL HASTINGS and CALLAWAY continued to conceal the known irreconcilable conflict from [VICTORY LANE], continued to bill and collect legal fees from [VICTORY LANE], and continued to advise and assert their influence over [VICTORY LANE] in connection with the prosecution of the litigation against [MORTON], all to the detriment of [VICTORY LANE].

Complaint, p. 4, ¶ 11. The alleged "irreconcilable conflict" was based on the dire financial condition of Morton, which placed Paul

3

Hastings in the conflicted position of pursuing and collecting a judgment for Victory Lane against Morton from a limited pool of funds, and collecting on a credit agreement between GECC and Morton from the same limited fund pool.  Further details underlying this alleged conflict of interest are developed in the following section of this Opinion.

After one or more continuations, the trial of the underlying suit was set to begin on November 4, 2002.  However, on or about November 1, 2002, Morton filed a petition in bankruptcy, which allegedly rendered the claims of Victory Lane against Morton practically valueless.  Paul Hastings represented GECC in the Morton bankruptcy proceeding.  Based at least in part on the ongoing bankruptcy proceeding, the parties agreed to entry of a Final Judgment which dismissed the underlying suit without prejudice.  The Judgment was entered on February 28, 2002.

Contending that it was damaged by the failure of Paul Hastings to disclose the above described conflict of interest, Victory Lane filed the subject suit in the Circuit Court of Rankin County, Mississippi on August 31, 2004.  The claims asserted in the Complaint are: count one, breach of contract; count two, professional negligence; count three, breach of fiduciary duty; and count four, fraud and suppression of material facts.  Victory Lane seeks an unspecified amount of compensatory and punitive damages.

On October 6, 2004, Defendants removed the case to this Court on the basis of diversity of citizenship under 28 U.S.C. § 1332. Defendants filed a Counter-Claim against Victory Lane on October 28, 2004. The claims in the Counter-Claim are: count one, breach of contract for failure to pay expenses and attorney's fees; and count two, quantum meruit for failure to pay attorney's fees. Victory Lane has paid legal fees totaling $60,000.00. The unpaid fees purportedly still owed to Paul Hastings amount to $135,625.10.

Defendants' Motion for Summary Judgment was filed on October 27, 2005. That Motion is now ripe for decision by the Court.

### III.   Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ.,

871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National

Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

### III.  Analysis

As stated above, the four claims asserted in Plaintiff's Complaint are: count one, breach of contract; count two, professional negligence; count three, breach of fiduciary duty; and count four, fraud and suppression of material facts.  Whether summary judgment should be granted on one or more of these four claims is considered under the following subheadings.

**A.   Count One, Breach of Contract**

Other than one brief statement in the Motion for Summary Judgment, Defendants failed to address Plaintiff's breach of contract claim. See Motion for Summary Judgment, p. 3, ¶ 4 (stating that Plaintiff's breach of contract claim suffers "from a failure of proof as to damages").  The breach of contract claim is addressed nowhere in Defendants' Memorandum in Support of Motion for Summary Judgment or Defendants' Reply to Plaintiff's Response to Motion for Summary Judgment.  Without further development of the basis for the breach of contract claim and the defenses thereto, the Court must deny summary judgment on this claim.

**B.   Count Two, Professional Negligence**

Plaintiff's professional negligence claim, which is also referenced herewith as a legal malpractice claim, is summarized by the following quote from the Complaint.

> 24. Defendants breached the duty and agreement to provide adequate legal representation to [VICTORY LANE], and rather than impartially represent the unique interests of the firms' [sic] clients, the interests of one of PAUL HASTINGS' other clients were favored to the detriment of [VICTORY LANE].
> 25. Defendants, CALLAWAY and PAUL HASTINGS, in agreeing to and representing [VICTORY LANE] in the aforesaid litigation against [MORTON], were careless, negligent and unskillful in that the positions and interests of [VICTORY LANE] were inherently in conflict with the interests and positions of another of the firm's clients, GECC, Inc., and they were unable to properly represent, protect and advise [VICTORY LANE] and in fact, failed to do so.

Complaint, pp. 7-8.

The basis for the alleged conflict of interest is that GECC was a major creditor of Morton. As such, the representation of GECC by Paul Hastings focused, at least in part, on protecting the security interest of GECC in the assets of Morton. This, according to Victory Lane, placed Paul Hastings in a conflict because, on the one hand Paul Hastings was protecting the security position of GECC in the assets of Morton, and on the other hand a potential judgment in favor of Victory Lane in the underlying suit would have to be satisfied from the same limited pool of assets. To determine whether this allegation forms the basis for a valid claim of legal malpractice, the Court must set forth applicable law on this issue.

In <u>Wilbourn v. Stennett, Wilkinson & Ward</u>, 687 So.2d 1205 (Miss. 1997), the Mississippi Supreme Court articulated the standard by which to analyze a legal malpractice claim.

> To recover in a legal malpractice case in this state, it is incumbent upon the plaintiff to prove by a

> preponderance of evidence the following: (1) Existence of a lawyer-client relationship; (2) Negligence on the part of the lawyer in handling his client's affairs entrusted to him; and (3) Proximate cause of the injury. Hickox v. Holleman, 502 So.2d 626, 633 (Miss. 1987). As to the second factor, a lawyer owes his client the duty to exercise the knowledge, skill, and ability ordinarily possessed and exercised by the members of the legal profession similarly situated. Failure to do so constitutes negligent conduct on the part of the lawyer. Id. at 634. As to the third essential ingredient, the plaintiff must show that, but for their attorney's negligence, he would have been successful in the prosecution or defense of the underlying action. See Thompson v. Erving's Hatcheries, Inc., 186 So.2d 756 (Miss.1966); Nause v. Goldman, 321 So.2d 304 (Miss.1975); Hickox v. Holleman, infra.

Id. at 1215. Under this holding, the following four elements must be proven to prevail on a legal malpractice claim: (1) an attorney / client relationship between the plaintiff and defendant; (2) failure of the attorney to represent the client in a reasonable manner; (3) proximate causation; and (4) damages.

In this case, it is undisputed that an attorney / client relationship existed between Victory Lane and Paul Hastings. Therefore, the first factor is met. Regarding the second factor, the Court finds that a genuine issue of material fact is created by the question of whether Paul Hastings represented Victory Lane in a reasonable manner. That is, under the facts of this case, reasonable finders of fact *could* conclude that the failure of Paul Hastings to inform Victory Lane of the purported conflict of interest was unreasonable under the circumstances.

The third and fourth factors, proximate causation and damages, are issues that require a more detailed analysis. As held by the Wilbourn court, to prove causation and damages, Victory Lane must make a showing that but for the negligence of Paul Hastings, it would have been successful in the underlying suit. Whether Victory Lane could have been "successful" in the underlying suit can be viewed in two manners. First, is whether it could have actually won a collectible judgment had the suit proceeded to trial. Second is whether Victory Lane could have achieved any recovery through settlement of the underlying suit prior to trial.

The Court finds that no matter who had represented Victory Lane in the underlying suit, no collectible judgment could have been realized had the case gone to trial. This finding is based on the undisputed fact that Morton filed a bankruptcy petition in November of 2002, three days prior to the date the underlying suit was set for trial. As admitted by Victory Lane, that bankruptcy filing rendered its claims against Morton "virtually worthless." Complaint, p. 4, ¶ 12. Accordingly, the Court finds that no genuine issue of material fact is represented by the issue of whether Victory Lane could have been awarded a collectible judgment in the underlying suit.

The second manner by which proximate cause and damages may be met is through proof that Victory Lane could have settled the underlying suit prior to trial. Victory Lane was offered between

$25,000.00 and $30,000.00 to settle this suit.  Morton also offered to give the Fast Bass mold to Victory Lane as another component of the settlement offer.  Victory Lane contends that the value of the mold was in the $100,000.00 range.  This offer was purportedly made in September of 2002.[1]  On the advice of Callaway, the offer was rejected.

Victory Lane argues that if it had known of the weak financial position of Morton, a fact that was or should reasonably have been known by Defendants through their representation of GECC, then the settlement offer would have been accepted.  In response to this contention, Defendants cite deposition testimony to the effect that Victory Lane would have rejected the settlement offer under any fact scenario.  The Court has reviewed the cited deposition testimony and finds that it does not support a conclusion that Victory Lane would have *definitively* rejected the settlement offer had it been apprised of all relevant facts. Accordingly, the Court finds that the trier of fact must decide the question of whether Victory Lane would have accepted the settlement offer of Morton, had it not been for the alleged conflict of interest created by the representation of both Victory Lane and GECC by Paul Hastings.

---

[1] Morton filed its petition in bankruptcy less than two months after the settlement offer was made.  This raises the question of whether Morton could have satisfied the money offer if Victory Lane opted to accept it.  However, none of the parties has submitted any evidence to the Court through which this question can be resolved.  This issue must therefore be reserved for decision at trial.

Based on the holdings presented above, the Court finds that summary judgment on the professional negligence claim should be granted in part and denied in part. The Motion must be granted to the extent that Victory Lane will be barred from seeking damages based on what it could have possibly recovered had the underlying suit proceeded to trial. The Motion must be denied to the extent that Victory Lane will be allowed to pursue damages at trial based on a potential recovery through settlement prior to trial.[2]

**C.   Count Three, Breach of Fiduciary Duty**

The duties owed by a lawyer to the client are "(a) the duty of care, (b) a duty of loyalty, and (c) duties provided by contract." Singleton v. Stegall, 580 So.2d 1242, 1244 (Miss. 1991). The contractual duties and the duty of care owed to Victory Lane by Defendants were considered above under sections III.A. and III.B. of this Opinion, respectively. In issue in this section is the duty of loyalty. Lawyers owe clients a duty "not wholly separate from the duty of care but sufficiently distinct that we afford it its own label, *vis.* the duty of loyalty, or sometimes, fidelity." Id. at 1245. Plaintiff's breach of fiduciary duty claim falls under this category.

In Tyson v. Moore, 613 So.2d 817 (Miss. 1993), the Mississippi Supreme Court analyzed the duty of loyalty, or fiduciary duty, and

---

[2]To recover damages, Victory Lane must of course also prove that Defendants were negligent in the representation of Victory Lane in the underlying suit.

12

contrasted that duty with the duty of care and duties created by contract.

> ... An attorney must deal with the client in a manner of "utmost honesty, good faith, fairness, integrity, and fidelity...." 7A C.J.S. Attorney & Client § 234 (1980). One respected treatise states:
>> The breach of fiduciary obligations, sometimes characterized as "constructive" fraud, has been appropriately recognized as an action in tort, not contract. The tort constitutes a wrong which is distinct and independent from professional negligence but still [comprises] legal malpractice. Some courts have suggested the standard of care encompasses the fiduciary obligations. More correctly, other courts have referred to fiduciary obligations as setting a standard of "conduct," as distinguished from the standard of "care" which pertains to the requisite skills and knowledge.
>
> Mallen & Smith, Legal Malpractice § 11.1 (3d ed. 1989) (citations omitted). We have recently recognized this distinction between the duty of care and the duty of loyalty. Singleton v. Stegall, 580 So.2d 1242 (Miss. 1991).
>
> The duty of loyalty is fiduciary in nature. In the present context its breach may take one of two forms. The first involves situations in which the attorney obtains an unfair personal advantage, such as acquiring property from a client; *the second involves situations in which the attorney or other clients have interests adverse to the client in question*. We have recently defined the lawyer's duty of loyalty to include a duty to:
>> safeguard the client's confidences and property, *avoid conflicting interests that might impair the representation*, and not employ adversely to the client powers conferred by the client-lawyer relationship.
>
> Singleton v. Stegall, 580 So.2d at 1245.

Id. at 823 (emphasis added).

Victory Lane contends that Defendants' failure to inform it of the alleged conflict of interest constitutes an actionable breach

13

of fiduciary duty. In fact, failure to inform a client of a potential conflict of interest does constitute a breach of fiduciary duty. Owen v. Pringle, 621 So.2d 668 (Miss. 1993).

> Conflict of interest occurs when a person charged with looking after the interests of A and B is faced with an option whereby if he makes one choice it will necessarily hurt A and help B, and if he makes the other choice he will of necessity help A and hurt B.

Hartford Accident & Indem. Co. v. Foster, 528 So.2d 255, 268 (Miss. 1988)(citation omitted). Victory Lane argues that this definition is met because by adequately protecting the security interests of GECC in its commercial transactions with Morton, the collectability of a potential judgment in favor of Victory Lane in the underlying suit could be jeopardized. Conversely, actively and effectively pursuing a judgment in the underlying suit could adversely affect the security interest of GECC in the assets of Morton. Under these facts, Victory Lane asserts that the representation of both GECC and Victory Lane by Paul Hastings was irreconcilable.

Defendants contend that no breach of fiduciary duty occurred because Callaway did not have *actual knowledge* that Paul Hastings was representing GECC with regard to a potential conflicting issue.[3] In support of this argument, Defendants cite a case decided by the Texas Court of Appeals, Wright v. Lewis, 777 S.W.2d

---

[3]Paul Hastings is a large law firm with offices in multiple locations. The Court is of the understanding that the attorney who represented GECC in its dealings with Morton was located in a different office than Callaway, and that Callaway and the attorney representing GECC had limited communication with one another.

520 (Tex. Ct. App. 1989).  Specifically, Defendants argue "[o]bviously ... a lawyer cannot breach the duty of loyalty by 'failing to reveal information of which the attorney had no knowledge.'" Memorandum in Support of Defendants' Motion for Summary Judgment, p. 14 (citing Wright, 777 S.W.2d at 522). Wright, of course, reflects Texas state law.

The problem with Defendants' argument is that binding Mississippi law holds otherwise.[4]  In Tyson, the Mississippi Supreme Court held:

> The breach [of the duty of loyalty] is characterized as "constructive fraud"[5] because proof of intent is irrelevant; thus, the elements of actual fraud, duress, or coercion do not enter into the analysis. The *objective standard* rests on this rationale: Because a breach of loyalty injures both the client's interests and the legal profession's integrity, the gravity of the harm cannot be cured by good faith.

Tyson, 613 So.2d at 823 (emphasis added; citations and parenthetical omitted).  Under this holding, an objective standard applies to the breach of fiduciary duty issue, as opposed to a subjective standard.  Therefore, Callaway's actual knowledge of the alleged conflict of interest need not be proven for Victory Lane to succeed on its breach of fiduciary duty claim.  Victory Lane need only prove that under the circumstances, Defendants reasonably

---

[4]As the jurisdictional basis of this case is diversity of citizenship, Mississippi law controls the substantive issues.

[5]"Constructive fraud" is defined as "[u]nintentional deception or misrepresentation that causes injury to another." Black's Law Dictionary 686 (8th ed. 2004).

should have known of the alleged conflict, and should have informed Victory Lane of said conflict.

This leads the Court to the issue of damages resulting from the purported breach of fiduciary duty.  Addressing one aspect of recoverable damages resulting from a breach of fiduciary duty, the Tyson court held "[a]ny transaction in which an attorney may have taken undue advantage of the client is voidable.  The transaction is rebuttably 'presumptively fraudulent.'  Upon proper showing, the court may relieve the client of its burden and may grant an equitable remedy." Tyson, 613 So.2d at 823 (citation omitted).  The court continued by describing defenses to a breach of fiduciary duty claim.  "To overcome the presumption, the attorney must prove three things: (1) the transaction's fairness, (2) the client's voluntary entry into the transaction, and (3) the client's full, independent understanding of the nature of the transactions and his or her rights." Id. at 823-24 (citation omitted).

Under the holdings in Tyson, if Victory Lane prevails on its breach of fiduciary duty claim against Defendants, it will be entitled to void its contract with Paul Hastings and seek return of the $60,000.00 in legal fees paid to Paul Hastings.  Additionally, Victory Lane will be allowed to offer evidence of the settlement offer described above in section III.B., as an element of damages for its breach of fiduciary duty claim.

16

Under the holdings presented above, the Motion for Summary Judgment must be denied as to Plaintiff's breach of fiduciary duty claim. However, compensatory damages at trial will be limited to the parameters set forth herein.

**D.  Count Four, Fraud and Suppression of Material Facts**

Defendants contend that the fraud and suppression claim must be dismissed because Victory Lane admits that neither Callaway nor Lane knew of the purported conflict of interest or the poor financial condition of Morton until very late in the litigation of the underlying suit. In fact, Derek Wright, an officer with Victory Lane, admitted that he had no reason to believe that Callaway or Lane knew of the subject conflict of interest or the financial condition of Morton. Deposition of Derek Wright, pp. 176-77, attached as Exhibit "A" to Defendants' Motion for Summary Judgment.

To succeed on a claim of fraud, a plaintiff must prove that the defendant had actual knowledge of the falsity of the statement. Levens v. Campbell, 733 So.2d 753, 761-62 (Miss. 1999)(citation omitted). The evidence before the Court indicates that Callaway and Lane had no knowledge of the alleged fraudulent information at the relevant times. The Court therefore finds that summary judgment should be granted on the fraud and suppression claim.

**E.      Claim for Punitive Damages**

Victory Lane asserted claims for punitive damages under count one, breach of contract, and count three, breach of fiduciary duty. Based on the facts of this case, the punitive damages claims appear tenuous. However, Defendants presented no arguments on this issue. Based on Defendants' silence on this issue, the punitive damages claims must survive this phase of the litigation.

### IV.   Conclusion

For the purpose of clarity, the Court summarizes the status of Plaintiff's four claims in light of the holdings presented above.

- Count 1, Breach of Contract: This claim will proceed to trial. The holdings herein have no effect on this claim.
- Count 2, Professional Negligence: This claim will proceed to trial. Proof of damages will be limited to the settlement offer made by Morton to resolve the underlying suit.
- Count 3, Breach of Fiduciary Duty: This claim will proceed to trial. Proof of damages will be limited to: (1) the settlement offer made by Morton to resolve the underlying suit; (2) the $60,000.00 of legal fees paid to Paul Hastings by Victory Lane; and (3) punitive damages.
- Count 4, Fraud and Suppression of Material Facts: This claim is dismissed on summary judgment, and will not proceed to trial.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (docket entry no. 59) is hereby granted in part and is hereby denied in part, in accordance with the summary presented in the previous paragraph of this Opinion.

SO ORDERED this the 13th day of January, 2006.

s/ William H. Barbour, Jr.  
UNITED STATES DISTRICT JUDGE

tct